IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Nowell A. Polus                                              (Chapter 7)

    Debtor.                                              Case No. 10-18148

Midwest Property Management,

    Plaintiff,

v.                                                              Adv. No. 11-00058

Nowell A. Polus

    Defendant.

MEMORANDUM DECISION

On June 30, 2011, a trial was held on the nondischargeability of a claim held by Midwest Property Management, Inc. ("Midwest") against the debtor, Nowell Polus. This decision constitutes my findings of fact and conclusions of law.

Nowell Polus ("defendant") worked as a contractor for Back Forty Log Homes, a business that he owned and operated for roughly 20 years. While in business, the defendant estimated he had constructed 70 homes, and was aware at all times of his duties under Wisconsin's theft-by-contractor statute (WIS. STAT. § 779.02(5)). On August 11, 2006, the defendant agreed to build a "log home shell" and a five-stall garage for Badger Mechanical, Inc. ("Badger") at a contract price of $131,400. Midwest owned the land where the construction was

1

to occur. Roger Lippett, served as the corporate representative for both Badger and Midwest. The defendant hired three men, paid on an hourly basis, to work on the project. As a condition of employment, two of the men requested they be paid in cash.

During the fall of 2006, the defendant and his crew provided labor and materials to the project. Badger paid the defendant a series of payments under the contract totaling $119,865. The defendant disbursed $101,308 of these funds by check to suppliers and subcontractors. Of the total disbursements, the defendant paid $16,000 to Lampert's Yard, Inc. ("Lampert") for materials. The $16,000 payment was insufficient to satisfy the defendant's entire debt to Lampert, and a balance remained of $8,340. The difference between the amount the defendant received on the contract and what he disbursed by check, roughly $18,000, was retained by the defendant.

On November 22, 2006, the defendant and Mr. Lippitt had a disagreement, and on that date the defendant abandoned the worksite. Not long after, the defendant notified Mr. Lippett of his intention to stop performance on the project and sent a final invoice for his work of $11,250. Mr. Lippitt never paid the final invoice amount.

As of December 8, 2006, the defendant still owed $8,340 to Lampert for materials used in the project. Despite numerous attempts by Lampert and Midwest, the defendant refused to pay the remaining balance. So, on February 14, 2007, Lampert filed a construction lien against the property for the amount owed. When neither Midwest, as owner, nor the defendant satisfied the lien, Lampert commenced a foreclosure action in Adams County Circuit Court on June 7, 2007. To settle, Midwest paid Lampert the balance owed, and in exchange Lampert dismissed his suit and assigned all right and interest in its claim against the defendant to Midwest.

2

Midwest then sued the defendant for payment on the claim. The defendant and Midwest stipulated to a judgment in favor of Midwest for $21,000. Also in the stipulation, Midwest reserved its right to file an action for nondischargeability against the defendant in his soon to follow bankruptcy case. On November 4, 2010, the defendant filed for relief under chapter 7 and sought to discharge his judgment debt to Midwest. Midwest commenced this adversary proceeding on February 3, 2011, under § 523(a)(4).

Bankruptcy Code § 523(a)(4) creates an exception to discharge for debts incurred from the debtor's "fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4). To establish a claim under § 523(a)(4), the plaintiff must establish that: (1) a trust existed; (2) the debtor was a fiduciary of the trust; and (3) the debtor committed "fraud or defalcation …while acting as a fiduciary of the trust." *See* 11 U.S.C. § 523(a)(4); *see also In re Mueller*, 2011 WL 2360122 (Bankr. W.D. Wis. 2011). In a proceeding to determine the nondischargeability of a debt, the burden is on the plaintiff to prove its case by a preponderance of the evidence. *See In re Martin*, 698 F.2d 883, 887 (7th Cir. 1983); *see also Grogan v. Garner*, 498 U.S. 279, 287 (1991). Courts must construe exceptions to discharge narrowly in favor of the debtor. *In re Chambers*, 348 F.3d 650, 654 (7th Cir. 2003).

Wisconsin's theft-by-contractor statute, in relevant part, provides that: "all moneys paid to any prime contractor…by any owner for improvements, constitute a trust fund only in the hands of the prime contractor…to the amount of all claims due or to become due or owing from the prime contractor or subcontractor for labor, services, materials, plans, and specifications used for the improvements." WIS. STAT. § 779.02(5). It is generally recognized that the language in the statute creates an "express trust" within the scope of § 523(a)(4). *See In re Mueller*, 2011 WL 2360122 (Bankr. E.D. Wis. 2011); *see also In re Koch*, 197 B.R. 654 (Bankr. W.D. Wis.

3

1996). The defendant, as a contractor and recipient of the contract funds, was a fiduciary of that trust.

The only remaining issue to decide is whether the defendant committed "defalcation" by retaining the remaining $18,000 of trust funds, rather than using the funds to pay off Lampert's balance. Bankruptcy courts in Wisconsin have recently recognized that a violation of the theft-by-contractor statute by itself is not *per se* defalcation. *In re Koch,* 197 B.R. 654 (Bankr. W.D. Wis. 1996)*; In re Rieck*, 439 B.R. 698, 702 (Bankr. W.D. Wis. 2010); *In re Mueller*, 2011 WL 2360122 (E.D. Wis. 2011) *(citing* Meyer v. Rigdon, 36 F.3d 1375, 1382-85 (7th Cir. 1994). Thus additional evidence, other than a mere violation of WIS. STAT. § 779.02(5), is needed to show that a defendant-contractor acted with the degree of culpability that amounts to "defalcation."

"Defalcation" is defined as something more than negligence. *See Meyer*, 36 F.3d at 1385. A contractor who negligently breaches his statutory duties created by the theft-by-contractor statute has not committed defalcation under § 523(a)(4). *See Koch*, 197 B.R. at 658-59. However, a contractor's reckless, willful or knowing violation of the statute is sufficient to establish "defalcation." *See In re Rieck*, 439 B.R. at 702; *see also In re Mueller*, 2011 WL 2360122, at *3-4. While a contractor's reckless violation of his statutory duties may be established by direct evidence, most courts look to the defendant's knowledge of the statute, the circumstances surrounding the violation, and the degree to which the defendant acted in his own self-interest, as relevant evidence from which inferences of culpability can be drawn. *See Koch*, 197 B.R. at 658 ("Koch's actual or constructive knowledge of the theft-by-contractor statute, or at least of his trust fund duties as general contractor, would seem to be material."); *see Mueller*, 2011 WL 2360122 at *3 ("[a] court should consider whether other factors exist, such as whether

4

the debtor acted in his own self-interest or merely showed what in hindsight amounted to poor judgment"); *see Rieck*, 439 B.R. at 703 (proof that the "defendant was responsible for the…accounts,…or was more than an innocent bystander 'peripherally involved' in what happened to the plaintiff's funds" may establish "defalcation").

In this case, I cannot infer from the evidence presented that the defendant's violation (if any) of Wisconsin's theft-by-contractor statute was anything more than negligent. Wisconsin law allows a contractor to retain, or pay to himself, the cost of his own labor incurred when performing a job. *See generally State v. Keyes*, 309 Wis.2d 516 (Wis. 2008) ("using money to pay themselves *in full* while other subcontractors have not been paid proportionally constitutes using money for a non-statutory purpose") (emphasis added). The only limitation on any payment retained is that the contractor not get paid an amount that is disproportionate to the amount received by other subcontractors. *See Id.* at 535.

The defendant retained $18,000 to cover labor costs for himself and the three men that worked for him. His testimony regarding the $18,000 was supported by a list of disbursements by check, which totaled $101,308 for labor and materials to various subcontractors, but included no checks to the defendant or his three hired helpers for their labor. There was no contention, much less proof, that the defendant and his crew failed to perform substantial labor pursuant to the contract from August to November of 2006. Having received only $119,865, $12,000 less than the total contract price, the defendant was unable to fully cover his own costs. Because the defendant's total labor costs for the job were approximately $23,000, I find that the $18,000 sum retained by the defendant was relatively proportional to the $16,000 payment made to Lampert on its balance of $24,340. Based on the virtual proportionality of payments that were made, I

5

cannot infer that the defendant's retention of funds constitutes a reckless violation of the theft-by-contractor statute.

While the defendant was, at all times, aware of his fiduciary duties under the theft-by-contractor statute, the circumstances surrounding the alleged violation and the degree to which the defendant acted in his own self-interest weigh against Midwest. At trial, the defendant credibly testified that he intended to satisfy the remaining balance to Lampert when paid on the final invoice sent to Badger. He was never paid. Lampert's bill went unpaid as did the balance of the defendant's labor costs. His testimony reflected a conscious and sincere effort to fulfill his fiduciary duties, which in insolation do not lead to any inference of recklessness.

Additionally, in performing his statutory duties I find the defendant did not conduct himself in a manner that reflected an impermissible amount of self-interest. After the defendant abandoned the job on November 22, 2006, he promptly notified Mr. Lippitt of his intention to permanently abandon the project. Along with this letter, the defendant included a final invoice that credited against the final amount owed, the work that the defendant did not complete. Also, after he had abandoned the job in December 2006, the defendant issued three checks totaling roughly $21,000 to subcontractors for their work on the project. In light of this conduct, I cannot infer that the defendant acted in a manner that was anything more than negligent.

I also cannot conclude that the defendant possessed the requisite criminal intent that would support treble damages under WIS. STAT. § 943.20 and WIS. STAT. § 895.446(3). To be entitled to treble damages, Midwest would need to establish that the defendant acted with an actual intent to defraud it. *See State v. Blaisdell*, 85 Wis.2d 172 (Wis. 1978) (to be entitled to treble damages, a plaintiff must establish that a defendant acted with "an actual intent to

6

defraud."). Neither the other evidence presented, nor the testimony of the defendant supports such a finding.

For the foregoing reasons, the debt owed to Midwest is dischargeable under § 727(a). Midwest's complaint is DISMISSED. It may be so ordered.

Dated: July 6, 2011

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

In re:

Nowell A. Polus (Chapter 7)

Debtor. Case No. 10-18148

---

Midwest Property Management,

Plaintiff,

v. Adv. No. 11-00058

Nowell A. Polus,

Defendant.

---

ORDER

The court having reached the conclusions of law contained in this memorandum decision filed on this date, it is hereby ORDERED, that the debt owed by the debtor to Midwest Property Management be discharged. The complaint filed by Midwest Property Management is DISMISSED.

Dated: July 6, 2011

ROBERT D. MARTIN
UNITED STATES BANKRUPTCY JUDGE